Reversed and remanded for further proceedings consistent herewith.

PETER J. BURKHART, PLAINTIFF-APPELLANT, v. PUBLIC EMPLOYEES RETIREMENT SYSTEM, STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, DEFENDANT-RESPONDENT AND S. CHARLES GAROFALO, PLAINTIFF-APPELLANT, v. PUBLIC EMPLOYEES RETIREMENT SYSTEM, STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 28, 1978—Decided April 11, 1978.

Before Judges HALPERN, LARNER and KING.

*Mr. Aaron Dines* argued the cause for appellants (*Messrs. Lordi, Imperial & Dines,* attorneys).

*Ms. Stacy L. Moore, Jr.,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General of New Jersey, and *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by
KING, J. A. D. Burkhart and Garofalo appeal from adverse determinations by the Board of Trustees of the Public Employees Retirement System (PERS).

Burkhart is a veteran who began employment as a Morris County freeholder on July 1, 1973. He was enrolled in PERS, effective November 1, pursuant to an application received by the Division of Pensions on June 3. On his application for enrollment Burkhart noted that he was employed as a committeeman for the Township of Montvale from January 1, 1966 to December 31, 1973. As a veteran, Burkhart should have been enrolled in PERS for that period, *N. J. S. A.* 43:15A–7(b)[1], but was not.

Following receipt of the Certification of Payroll Deductions in July, Burkhart expressed interest in acquiring pension credit for the period of his employment by the Township of Montvale, and for his first four months as freeholder, July through October of 1973. Ultimately, the Division of Pensions advised Burkhart he was eligible to purchase such credits — a total of seven years and eight months — at a cost of $5,160.51. This quotation was based on his age and salary at the time of his request, a requirement the Division then deemed mandatory pursuant to *N. J S. A.* 43:15A–8.

In October Burkhart objected to the high cost of the acquisition. In November he was advised that *L.* 1974, *c.* 104, § 1, which amended *N. J. S. A.* 43:15A–54, would permit adjustment of the cost calculation, providing certain criteria were met. Finally, on April 25, 1975, the Division advised Burkhart that if he were to provide documentation establishing that Montvale had never given him the opportunity to enroll in PERS when he became a committeeman on January

---

[1]"There is hereby established the **Public Employees' Retirement System** of New Jersey in the Division of Pensions of the Department of the Treasury. The membership of the retirement system shall include:

\*     \*     \*     \*     \*     \*     \*     \*

(b) Any person becoming an employee of the State or other employer after January 2, 1955 and every veteran, other than those whose appointments are temporary or seasonal, becoming an employee of the State or other employer after such date; and \* \* \*."

1, 1966, and that Montvale agreed to pay the necessary employer contributions, he would be permitted to acquire credit pursuant to the so-called "correction of error" provision, *N. J. S. A.* 43:15A–54. The Division interpreted this statute to require cost calculations based on what the member would have paid had he been enrolled initially, *i. e.,* age and salary for each calendar year of employment, rather than age and salary at the time of purchase. Cost of credit on this basis was $542.30. Burkhart acquired the credit for this figure.

In October 1976 Burkhart was advised by the PERS Board that his previous purchase was rescinded because the credit could be acquired by purchase under another section of the act, *N. J. S. A.* 43:15A–8. The Board further contended that even if the purchase were considered to have been made under *N. J. S. A.* 43:15A–54, it would be based on current age and salary, the same as if made under *N. J. S. A.* 43:15A–8. Burkhart's acquisition was vacated and his $542.30 was returned.

Garofalo is also a veteran who commenced employment as a freeholder for Morris County on January 1, 1975. He contemporaneously enrolled in PERS. He then expressed an interest in acquiring pension credit for his prior employment as a councilman for Rockaway Township from January 1, 1973 to January 31, 1975. In August 1975 the Division of Pensions advised Garofalo that he was eligible to make a purchase for the period from May 1, 1973 to December 31, 1974, thereby acquiring an additional one year and eight months credit. The cost was quoted based on his age and salary at the time of the request, a total of $1,095.40.

At the same time the Division was advised by Rockaway that Garofalo had never been told of his right to enroll in PERS and that Rockaway would pay the employer's liability if acquisition was made pursuant to *N. J. S. A.* 43:15A–54. On October 9 Garofalo was told by the Division that he could obtain credit if he could qualify under *N. J. S. A.* 43:15A–54, and the cost would be calculated based on his age

and salary as if he had been properly enrolled in PERS while a councilman during 1973 and 1974. Computed by this method the cost of the credit was $153.41. Garofalo agreed to make the acquisition on this basis. Thereafter, in February 1976 the PERS Board denied Garofalo's application under *N. J. S. A.* 43:15A–54 because he was eligible, under the administrative practice and procedure of the Division of Pensions, to make the acquisition under *N. J. S. A.* 43:15A–8.

On this appeal both Burkhart and Garofalo contend that *N. J. S. A.* 43:15A–54, the so-called "correction of errors" section, permits them to acquire credits at their previous age and salary, and that they should only make those payments which would have been required had they been members of PERS from the inception of their public employment. The Attorney General contends, consistent with his advice to the Board of PERS, that credits either must be purchased under *N. J. S. A.* 43:15A–8, based on present age and salary, or alternatively, that if *N. J. S. A.* 43:15A–54 does apply, its provisions require contributions on the basis of present age and salary. Both parties equivocally concede that *N. J. S. A.* 43:15A–7.1 may have possible applicability. The issue, then, is one of discerning legislative intent from this perplexing statutory scheme.

We conclude that neither *N. J. S. A.* 43:15A–8(a) or (b) has applicability. Subsection (a) obtains "if a member of the retirement system has been discontinued from service * * * and he has not withdrawn his accumulated deductions" and he returns to service within five years from the date of discontinuance. Subsection (b) obtains where an employee has withdrawn his accumulated deductions and is thereafter re-enrolled. He may purchase credit for all previous service at a rate based on his age and salary at the time of purchase. Obviously, neither subsection (a) or (b) has any application to Burkhart's and Garofalo's situation.

■ With respect to *N. J. S. A.* 43:15A–7.1, we are told by the Attorney General that although this section may appear to be facially applicable to the present situation, the .administrative practice is not to use this section, "with payment of the penalty by a former employer for late enrollment, where the employee is enrolled at a later date by a subsequent employer." *N. J. S. A.* 43:15A–7.1 seems to contemplate a delinquent or late filing rather than the correction of an error where an employee was nonculpable. Since the language of *N. J. S. A.* 43:15A–54 more precisely applies to the factual situation before us, we conclude that *N. J. S. A.* 43:15A–7.1 should not be invoked. The more specific statute controls over the more general. 2A *Sutherland, Statutory Construction* (3 ed. rev. 1973), § 51.05 at 315.

*N. J. S. A.* 43:15A–54, entitled "Correction of errors; approval of prior service credit or credit for all previous service," states in full:

> If any change or error results in an employee or beneficiary receiving from the retirement system more or less than he would have been entitled to receive, then on discovery of the error, the retirement system shall correct it and, so far as practicable, adjust the payments in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.
>
> The application of any member for prior service credit or credit for all previous service shall be approved if the employer, for whom the service was rendered stipulates, in writing, to the retirement system that the information necessary for the award of such credit was not presented to the employee and agrees to make the necessary additional contribution to the contingent reserve fund and the employee makes the required contributions, if any.

The first paragraph appears to apply to situations of clerical or mechanical error. The second paragraph relates to the instant situation where a present member applies for prior service credit and the former employer agrees in writing that the pension information was not presented to the employee and further agrees to make the necessary contribution to the contingent reserve fund. These conditions were clearly met by Burkhart and Garofalo in this case. Both

Burkhart and Garofalo stand prepared to make "the required contributions" under *N. J. S. A.* 43:15A–54, but insist that "required contributions" should be calculated on what they would have paid at their previous age and salary. The Attorney General asserts that the "required contributions" should be based on present age and salary. The statute is silent on the method of actuarial calculation.

The Attorney General points out that a number of other sections of the PERS statute specifically require a member to pay the system the value of the service credit based on age and salary at the time of purchase. *N. J. S. A.* 43:15A–8(b) (employee who has withdrawn contributions is re-enrolled); *N. J. S. A.* 43:15A–9 (nonmember employee who may join at any time); *N. J. S. A.* 43:15A–11 (contributions covering temporary service); *N. J. S. A.* 43:15A–14 (transfer of member from teacher's fund to retirement system); *N. J. S. A.* 43:15A–39 (preserving annuity credit for period of leave of absence); *N. J. S. A.* 43:15A–73.1 (purchase of credit for prior employment in other states), and *N. J. S. A.* 43:15A–129 (enrollment of those who elected not to enroll in 1955). We are urged to construe "required contributions" under *N. J. S. A.* 43:15A–54 in a manner consistent with those provisions where the present age and salary purchase criteria was specifically included. We are more persuaded to the conclusion that the Legislature certainly knew how to specify precisely a present age and salary purchase cost when it desired to do so. Additionally, none of the above cited statutes was designed to correct past errors whereby innocent employees were excluded from the system.

*N. J. S. A.* 43:15A–54 was adopted by *L.* 1971, *c.* 213, § 25, as amended by *L.* 1974, *c.* 104, § 1, as a provision for the correction of errors, both as to the amount of pension benefits and the inclusion of members erroneously excluded by prior oversights. The original act of 1971 required approval of an application for prior service credit "if the employer stipulates, in writing, to the retirement system that

the information necessary for the award of such credit was not presented to the employee and agrees to make the necessary additional contribution to the contingent reserve fund." The 1974 amendment added the language, "and the employee makes the required contributions, if any."

■ Significantly, the statute does not speak of a purchase of credits. Rather, it seeks to rectify a situation where the employee was not informed initially by his employer of his right to participate. If the requisite conditions are met, the statute seeks to correct the error, as its title suggests. We conclude that the legislative intent was to restore the employee in this situation to his former status, as if the error had not been committed. This can only be done if the "required contributions" are based on previous age and salary. If the employee were simply permitted to purchase credit for prior service on a current age and salary, no past error would be corrected. The statute would merely provide another means of present purchase of credit.

■ As appellants point out, in situations where individuals are mandatorily subject to public retirement programs, but are not so informed, the response of the courts has been uniform. Upon payment of an amount equal to the sum which would have been contributed to the retirement fund through payroll deductions all rights have been granted to the employees. They are members despite the error of their employers. *Caronia v. Orange Police and Fire Pension Comm'n*, 18 *N. J. Super.* 149, 153 (App. Div. 1952) ; *Bahrle v. Mirabelli*, 107 *N. J. Super.* 361, 370–371 (Law Div. 1969) ; *Linden Bd. of Ed. v. Liekman*, 56 *N. J. Super.* 566 (Ch. Div. 1959) ; *Gerendasy v. Elizabeth Police and Fireman's Pension Comm'n*, 130 *N. J. L.* 226 (Sup. Ct. 1943) ; *Whalan v. Pension Comm'n*, 7 *N. J. Misc.* 964 (Sup. Ct. 1929), aff'd 107 *N. J. L.* 198 (E. & A. 1930).

We construe *N. J. S. A.* 43 :15A–54 as a remedial statute, consistent with the judicial trend expressed by the above cases. The statute is specifically designed to correct past errors, caused not by the oversight of employees but

by that of employers. We should not indulge in a forced interpretation of the words "the required contributions" under the 1974 amendment to *N. J. S. A.* 43 :15A–54, whereby an innocent employee would be penalized by paying a significantly higher rate than if no error had been committed.

As our Supreme Court said in *Geller v. Dept. of the Treasury,* 53 *N. J.* 591 (1969) :

Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. 3 *McQuillin, Municipal Corporations* (3d Ed. Rev. 1963) § 12.141. They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby. *McQuillin, supra,* at § 12.143; and see *Adams v. City of Modesto,* 53 *Cal.* 2d 833, 3 *Cal. Rptr.* 561, 566, 350 *P.* 2d 529 (1960) ; *Giuliano v. Bd. of Trustees of Fireman's Pension F.,* 89 *Ill. App.* 2d 126, 231 *N. E.* 2d 257, 258 (1967) ; *Flake v. Bennett,* 261 *Iowa* 1005, 156 *N. W.* 2d 849, 854 (Sup. Ct. 1968). [at 597–598]

We see no intent in the language of *N. J. S. A.* 43 :15A–54 to reverse the ameliorative, remedial thrust of the cases antedating the 1974 amendment. An employee, otherwise qualified under *N. J. S. A.* 43 :15A–54, need only contribute a sum equal to that which the retirement fund would have had at its disposal if the deductions had properly been made as originally required.

■ Appellants acknowledge, and we agree, that the payments based on past age and salary should carry legal interest of 8% from the date actually due to the pension system. PERS may legally require such payment. See *Geller v. Dept. of the Treasury, supra,* 53 *N. J.* at 600.

Reversed and remanded.