711 A.2d 978 (1998)
312 N.J. Super. 387
COUNTY OF CAMDEN, a Body Politic of the State of New Jersey, Plaintiff-Respondent,
v.
SOUTH JERSEY PORT CORPORATION, a Body Corporate and Politic of the State of New Jersey, Defendant-Appellant, and
Christine Todd Whitman, Governor of the State of New Jersey, Defendant.
New Jersey Economic Development Authority, Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1998.[1]
Decided June 25, 1998.
*979 Frederick F. Fitchett, III, Atlantic City, for defendant-appellant (Horn, Goldberg, Gorny, Plackter, Weiss & Perskie, attorneys; Mr. Fitchett and Jill Manuel-Coughlin, Voorhees, on the brief).
Robert G. Millenky, County Counsel, for plaintiff-respondent (Mr. Millenky, attorney; Donna M. Whiteside, Assistant County Counsel, on the brief).
Edward G. Pillsbury, Deputy Attorney General, for intervenor-respondent (Peter Verniero, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Pillsbury, on the brief).
Before Judges KING, MUIR, Jr. and CUFF.
The opinion of the court was delivered by
MUIR, Jr., J.A.D.
We hold on this appeal that it is not the intent and purpose of the South Jersey Port Corporation Act (Act), N.J.S.A. 12:11A-1 to -29, to permit the County of Camden, holder of a $1.25 million judgment against the South Jersey Port Corporation (SJPC), to conduct, under a writ of execution, a levy and sale of the SJPC equipment when the record discloses that such a sale would terminate the SJPC operation and that the SJPC has no financial means to otherwise satisfy the judgment. Accordingly, we vacate the trial court order denying the SJPC's application for a permanent stay of the writ of execution, levy, and sale; and we remand for entry of an order of permanent stay of the writ of *980 execution against the SJPC personal property.

I

THE SOUTH JERSEY PORT CORPORATION ACT
We begin with a review of the Act. The Act creates the SJPC in order to purchase, construct, lease, and operate marine terminals within the South Jersey Port District, which includes Camden County. It also deems the operation and maintenance of these marine terminals "an essential governmental function." N.J.S.A. 12:11A-5a.
N.J.S.A. 12:11A-6 outlines the powers of the SJPC. Among these powers is the power to "sue and be sued in its own name," N.J.S.A. 12:11A-6(d); the power to enter into lease agreements with private marine terminal operators for the purpose of operating and maintaining marine terminals, N.J.S.A. 12:11A-6(f); the power to issue bonds or notes for any corporate purposes, N.J.S.A. 12:11A-6(g); and the power to fix and collect rents, tolls, and charges for use and services rendered, N.J.S.A. 12:11A-6(h).
N.J.S.A. 12:11A-12 addresses the payment of bonds and notes. Subsection (a) authorizes the SJPC to secure the payments of its bonds or notes by (1) "pledg[ing] all or any part of its rents, tolls, fees or revenues"; (2) "covenant[ing] against pledging all or any part of its rents, tolls, fees or revenues, or against mortgaging all or any part of its real or personal property"; or (3) covenanting "against permitting or suffering any lien on such rents, tolls, fees, revenues or property." N.J.S.A. 12:11A-12(a)(i), (ii).
N.J.S.A. 12:11A-12(b) outlines the priority of the lien created by an SJPC pledge of rents, tolls, revenues, and fees. It states, "[a]ny pledge of rents, tolls, fees or other revenues or other moneys made by the [SJPC] shall be valid and binding from the time when the pledge is made." The subsection states that the lien created by the pledge is "valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the [SJPC] irrespective of whether such parties have notice." Ibid. Moreover, the subsection states that neither the bond resolution nor any other instrument "need be filed or recorded." Ibid. Finally, the subsection provides security to bondholders by prohibiting the SJPC from entering into bond resolutions that provide for the issuance of bonds or notes that "convey or mortgage any project or any part thereof." Ibid.
The Act goes on to establish a "South Jersey Port Corporation Reserve Fund" solely for the purpose of "payment of the interest on and principal of bonds of the [SJPC] as the same shall become due and payable and for the retirement of bonds." N.J.S.A. 12:11A-13(a). The provision also outlines that the source of the money for the Fund shall come from "(1) moneys appropriated... by the State, (2) proceeds of bonds required to be deposited therein by terms of any contracts between the [SJPC] and its bondholders, and (3) other moneys or funds of the [SJPC] which it determines to deposit." Ibid.
As further assurance to the SJPC bondholders that their investments will be protected, the Act provides:
In order to assure the maintenance of the maximum debt service reserve in the South Jersey Port Corporation Reserve Fund, there shall be annually appropriated and paid to the [SJPC] for deposit in said fund, such sum, if any, as shall be certified by the chairman of the [SJPC] to the Governor as necessary to restore said fund to an amount equal to the maximum debt service reserve. The chairman shall annually, on or before December 1, make and deliver to the Governor his certificate stating the sum, if any, required to restore said fund to the amount aforesaid, and the sum or sums so certified shall be appropriated and paid to the [SJPC] during the then current State fiscal year.

[N.J.S.A. 12:11A-14.]
In N.J.S.A. 12:11A-20a, the Act exempts the SJPC from taxation. It states that "as the development, operation and maintenance of marine terminals by the [SJPC] will constitute the performance of essential governmental functions, the [SJPC] shall not be required to pay any taxes or assessments upon any marine terminal or any property" or any income derived from the property or operation of the terminal. Ibid. The Act also *981 excludes from taxation income derived from the issuance and redemption of bonds and notes. Ibid.
Recognizing that the tax exempt status may create substantial revenue loss to counties and municipalities, the Act provides a mechanism for in lieu of tax payments. N.J.S.A. 12:11A-20b states that the SJPC is
authorized, empowered and directed to enter into ... agreements ... with any county or municipality, prior to the issuance of bonds of the [SJPC] for financing such acquisitions or the expenditure of moneys (other than proceeds of such bonds) for improvement of said property for the purposes of the [SJPC], whereby it will undertake to pay a fair and reasonable sum or sums (hereinafter called "tax payment") to compensate the said county or municipality for any loss of such tax revenue by reason of the acquisition of any such property by the [SJPC].
The Act also establishes a "South Jersey Port Corporation Tax Reserve Fund" as a source fund for in lieu of tax payments. N.J.S.A. 12:11A-20b. The Act provides:
The [SJPC] shall establish and maintain a special fund called the "South Jersey Port Corporation Tax Reserve Fund" in which there shall be deposited (1) moneys appropriated therefor by the State, (2) proceeds of bonds or notes required to be deposited therein by terms of any contract between the [SJPC] and its bondholders or noteholders, and (3) other moneys or funds of the [SJPC] available for such deposit pursuant to the terms of tax agreements or said contract.

[Ibid.]
Moreover, the Act provides:
The obligation of the [SJPC] to make any tax payments from its funds or moneys (other than from moneys in the special fund hereinafter referred to) shall in every instance be in the manner and to the extent set forth and provided for in such tax agreements and shall be at all times subject to prior use and application of funds and moneys of the [SJPC] to provide for its operating and maintenance expenses and reserve therefor and for principal, interest and retirement of bonds and reserves and securities therefor as provided in any contract with holders of its bonds.

[Ibid. (emphasis added).]
In addition to N.J.S.A. 12:11A-20b, N.J.S.A. 12:11A-15 also establishes a source fund for in lieu of tax payments. It authorizes the SJPC to set aside funds, other than those set aside in the South Jersey Port Corporation Tax Reserve Fund, in order to meet tax obligations or comply with tax agreements. N.J.S.A. 12:11A-15. It states:
The [SJPC] may establish such additional and further reserve funds as may be, in its discretion, necessary and desirable or to comply with the provisions of any agreement made by or any resolution of the [SJPC].

[Ibid.]
Finally, the Act contains a section titled "Liberal construction." N.J.S.A. 12:11A-26. This section provides:
This act, being necessary for the welfare of the State and its inhabitants, shall be liberally construed to effect the purposes thereof.

[Ibid.]

II

PROCEDURAL HISTORY AND FACTS
On June 18, 1993, Camden County and the SJPC entered into an agreement for payments in lieu of taxes for the years 1993 and 1994. The agreement was never honored as the SJPC failed to pay in lieu of taxes for 1993, 1994, 1995, and 1996. Consequently, Camden County obtained three separate judgments totalling $1,250,517 against the SJPC. The first judgment entered July 31, 1995, totaled $185,948.35, plus interest; the second judgment entered October 25, 1996, totaled $492,869.58, plus interest; and the third judgment entered January 28, 1997, totaled $447,715.60, plus interest.
On July 16, 1996, another part of this court issued an unreported opinion affirming the first judgment. In that opinion, the court held, "we discern no intention by the parties or the Legislature to free the [SJPC] from *982 liability should the Legislature not appropriate funds and the [SJPC] experience a net operating loss." The court further ruled, "we find that the [SJPC] must comply with the tax agreement despite its financial difficulties." Finally, the court noted:
Any writ of execution must [pursuant to N.J.S.A. 12:11A-20], in accordance with the statute and the agreement, be "subject to prior use and application of funds and moneys of the [SJPC] to provide for its operating and maintenance expenses and reserve therefor and for principal, interest and retirement of bonds and reserves, and securities therefor as provided in any contract with holders of its bonds."
As a result of the judgment, on October 8, 1997, Camden County levied upon certain SJPC bank accounts maintained as part of the New Jersey Cash Management Fund. Subsequently, the SJPC secured an order to show cause why the levy should not be enjoined. The trial court granted an injunction. The ensuing order is not at issue on this appeal.
On January 15, 1998, Camden County levied upon the SJPC's personalty located at the Broadway Terminal in Camden, New Jersey. The personalty included cranes and other equipment essential to the operation of the SJPC facility. The Executive Director of the SJPC certified that the equipment levied upon was necessary for the marine terminal's continued operation. The Sheriff's Sale of these items was scheduled for January 30, 1998, at 11 a.m.
On January 28, 1998, the SJPC filed an Order to Show Cause requesting the "levy upon SJPC's Personalty" be voided and "prohibiting [Camden County] from obtaining a writ ... to execute against real estate." The trial court denied the SJPC's application for a stay of the Sheriff's Sale on the grounds that the SJPC was not an agency for purposes of the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 to -10.
The same morning, the SJPC filed a notice of appeal and made an emergent application for a stay of the Sheriff's Sale. This court entered a stay of the Sheriff's Sale pending accelerated resolution of the appeal.
Thereafter, we granted the Attorney General's motion for leave to intervene on behalf of the New Jersey Economic Development Authority (NJEDA) based on the NJEDA's impending ownership of all of the assets and liabilities of the SJPC pursuant to the Port Unification and Financing Act, N.J.S.A. 34:1B-144 to -164. We specifically note the issue before us is presented in the context of a record that the SJPC is financially unable to otherwise satisfy the Camden County judgment due to insufficiency of income to pay its operating expenses and bond obligations.[2]

III

DISCUSSION
The SJPC and the NJEDA argue the trial court order denying the stay of the Sheriff's Sale should be reversed because N.J.S.A. 12:11A-20 precludes Camden County from levying on the personalty of the SJPC. Relying on the language in N.J.S.A. 12:11A-20b, they explain that the Legislature intended that payments in lieu of taxes can only come from funds contained in the South Jersey Port Corporation Tax Reserve Fund and not *983 from the forced sale of their personal property. In addition, they argue that the execution of the levy on the SJPC's equipment is nothing more than an attempt to effectuate greater rights to Camden County than those rights provided to it by section 20 of the SJPC enabling Act.
In response, Camden County argues that the SJPC and NJEDA's position fails because the language in the SJPC enabling Act only protects the SJPC's revenue and bank accounts from judgment creditors and not real or personal property. Camden County explains that, if the Legislature intended to protect the SJPC's real and personal property, it would have provided specific language exempting the property from claims, levies, execution, and attachment. In support of this argument, Camden County cites to provisions contained in the New Jersey Transit Corporation enabling statute, N.J.S.A. 27:25-18, and the Port Unification and Financing Act, N.J.S.A. 34:1B-162(b), which contain specific language prohibiting judgment creditors from levying on real and personal property. Camden County reasons that, since the Legislature knew how to protect real and personal property from judgment creditors and chose not to do so in the SJPC enabling Act, protection of real and personal property from judgment creditor levies was not the intent of the Act. We disagree with Camden County's position, satisfied the Act's intent indicates the SJPC's personal property is protected from judgment creditors under the specific circumstances disclosed by the record.
The clearest indication of an Act's meaning is its plain language. National Waste Recycling, Inc. v. Middlesex Cty. Improvement Auth., 150 N.J. 209, 223, 695 A.2d 1381 (1997). However, in times when the statute's plain language creates ambiguities, courts must interpret the statute in a manner consistent with the legislative intent. State v. Szemple, 135 N.J. 406, 422, 640 A.2d 817 (1994). It is the general intent of the statute that controls the interpretation of its parts. Ibid.; Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987). "`[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as "consonant to reason and good discretion."'" Roig v. Kelsey, 135 N.J. 500, 515, 641 A.2d 248 (1994) (quoting Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (quoting Morris Canal & Banking Co. v. Central R.R., 16 N.J. Eq. 419, 428 (Ch. 1863))). Put simply, courts should avoid interpreting a statute in a manner that leads to an absurd, anomalous, or unreasonable result. Strasenburgh v. Straubmuller, 146 N.J. 527, 542, 683 A.2d 818 (1996); Reisman v. Great Am. Recreation, Inc., 266 N.J.Super. 87, 96, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993). Statutory interpretations should turn on the breadth of legislative objectives and the common sense of the situation. Jersey City Chapter, Property Owner's Protective Ass'n v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969).
Applying the enunciated principles here leads to the conclusion the legislative intent behind the Act is the continued development and operation of the marine terminal in Camden County. N.J.S.A. 12:11A-20b prioritizes the SJPC's payment obligations and provides that operating expenses, maintenance expenses, and the security of bondholders take precedence over payments in lieu of taxes. Specifically, the Act provides that the obligation for the SJPC to make tax payments as outlined by the tax agreements "shall be ... subject to prior use and application of funds and moneys of the [SJPC] to provide for its operating and maintenance expenses and reserve therefor and for principal, interest and retirement of bonds and reserves and securities." N.J.S.A. 12:11A-20b. The intent behind this provision is to ensure the existence of the terminal by protecting funds and reserves so that it can continue to operate. Beyond that, the Act also protects funds, moneys, and reserves necessary to retire or pay principal and interest on bonds. Thus, both operating expenses and bondholders have priority over in lieu of tax payments.
It would lead to an absurd result to conclude, as Camden County proposes, that the Legislature intended to protect the financial assets and reserves necessary for the continued operation and development of the marine terminal without providing this same protection *984 to the very equipment that is vital to the generation of these assets and reserves. If the sale is allowed to proceed and the equipment is sold, the record reveals the marine terminal will cease to exist and there may be insufficient funds to meet operating expenses and to pay the bondholders. This result would run contrary to the Legislature's intent for continued operation of the marine terminal.
Moreover, N.J.S.A. 12:11A-26 compels this court to construe the statute liberally in order to advance its purposes. Chief among those purposes, as evidenced by the legislative findings, is to provide adequate port facilities in southern New Jersey. See N.J.S.A. 12:11A-1. This purpose is further echoed in N.J.S.A. 12:11A-5, where the statute deems the "establishment, acquisition, construction, rehabilitation, improvement, operation and maintenance of marine terminals ... an essential governmental function of the State." Since the SJPC cannot survive without the operating equipment that Camden County seeks to sell, only a vacation of the trial court order can achieve the legislative goal of construing the Act liberally to advance its purposes.
Further support for vacating the order is found when the SJPC enabling Act is read in pari materia with the Port Unification and Financing Act. A fundamental tenet of statutory construction is that by reading two statutes together courts can ascertain the legislative intent. In re J.W.D., 149 N.J. 108, 115, 693 A.2d 92 (1997). Statutes relating to the same subject matter or subject, although one may be specific and the other general, are to be construed as one in order to give effect to both. City of Clifton v. Passaic Cty. Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958). Additionally, the Supreme Court has held:
It is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same subject matter. Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent. Such enactments are to be considered as a "homogeneous and consistent whole, giving effect to all their provisions."
[State v. Green, 62 N.J. 547, 554-55, 303 A.2d 312 (1973) (quoting Watson v. Jaffe, 121 N.J.Super. 213, 214, 296 A.2d 537 (App.Div.1972)).]
Applying the enunciated principles to the Port Unification and Financing Act and the SJPC enabling Act clears up any ambiguity there may be with regard to whether Camden County should be permitted to execute on the SJPC's personal property.
The Port Unification and Financing Act was enacted for the purpose of unifying the ports of Camden and Philadelphia. It transfers the assets of the SJPC, along with liabilities and obligations, to the NJEDA. N.J.S.A. 34:1B-145. It authorizes the NJEDA "to enter into any agreement with a subsidiary corporation with respect to the lease, management or other operation of all or a portion of the port facilities on such terms as the [NJEDA] shall deem appropriate." N.J.S.A. 34:1B-147b. It also contemplates that the employees of the SJPC will be transferred to the newly created joint-operating Camden/Philadelphia marine terminal. N.J.S.A. 34:1B-145. Similarly, the SJPC enabling Act recognizes the "establishment, acquisition, construction, rehabilitation, improvement, operation and maintenance of marine terminals ... an essential governmental function of the State." N.J.S.A. 12:11A-5a. If Camden County is permitted to execute a forced sale of vehicles, equipment, or other assets that are utilized by the SJPC to operate and maintain the marine terminals, the SJPC would be unable to transfer a functional terminal, as all operations would be forced to shut down. The intent behind the SJPC enabling Act and the Port Unification and Financing Act would not be achieved. Given the unmistakable legislative intent of the SJPC enabling Act and the Port Unification and Financing Act to assure the continued operation of the SJPC marine terminal, we conclude the order under appeal must be vacated and Camden County enjoined.
Supplementally, we note our statutory interpretation is not in conflict with the legislative intent of N.J.S.A. 12:11A-6(d), which *985 indicates the SJPC has the right to "sue and be sued." It is a basic tenet of statutory interpretation that courts are enjoined to find consistency when the legislative intents of two statutes on the same subject appear conflicting. In re Schuman, 114 N.J. 14, 25, 552 A.2d 602 (1989).
Here, consistency exists. The legislative intent behind N.J.S.A. 12:11A-6 is to allow the SJPC to be sued. Based on the previous statutory analysis, it would appear this provision is useless as the SJPC is judgment proof. However, consistent with the overall intent of protecting the bondholders and keeping the marine terminal operational, creditors can still sue; and any judgments entered against the SJPC can be honored through legislative appropriations or future profits generated from the SJPC operations. In essence, the Legislature has created an entity that is not judgment proof but, in times of inadequate gross income, required to guarantee there will always be sufficient money for operating expenses and bondholder obligations.
In sum, we conclude it is neither the legislative intent nor the purpose of the Act to permit Camden County to collect its in lieu of tax payment by enforcing its writ of execution of judgment through levy and sale of the SJPC equipment given the evidence in the record that the equipment is necessary to continue the SJPC operation and the SJPC is financially unable to otherwise satisfy the Camden County judgment. Consequently, Camden County's writ of execution, levy, and sale must be enjoined.
Reversed and remanded to the trial court for entry of an order enjoining the execution, levy, and sale.
NOTES
[1] Originally scheduled for argument on April 29, 1998, argument was adjourned until June 12, 1998, by mutual agreement of the parties.
[2] The SJPC's insufficiency of income to meet its in lieu of tax obligations for the years 1993 through 1996 corresponds with lack of legislative appropriations for these same years. For example: in the 1994-95 Appropriations Act, the Legislature appropriated $3,648,000 to SJPC for a debt service reserve fund, but it did not appropriate any money to SJPC for the South Jersey Port Corporation Tax Reserve Fund, L. 1994, c. 67; in the 1995-96 Appropriations Act, the Legislature appropriated $3,648,000 to SJPC for a debt service reserve fund, but it did not appropriate any money to SJPC for the South Jersey Port Corporation Tax Reserve Fund, L. 1995, c. 164; in the 1996-97 Appropriations Act, the Legislature appropriated $3,148,000 to SJPC for a debt service reserve fund, but it did not appropriate any money to SJPC for the South Jersey Port Corporation Tax Reserve Fund, L. 1996, c. 42; and in the 1997-98 Appropriations Act, the Legislature appropriated $3,148,000 to SJPC for a debt service reserve fund, but it did not appropriate any money to SJPC for the South Jersey Port Corporation Tax Reserve Fund, L. 1997, c. 131. Moreover, in the Governor's Budget Message for the fiscal year 1994-95, a request and recommendation were made that the Legislature appropriate $3,900,000 to the SJPC for the South Jersey Port Corporation Tax Reserve Fund. This request, however, was denied.