841 A.2d 483 (2004)
366 N.J. Super. 411
G. Philip LEWIS, Appellant,
v.
BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 28, 2003.
Decided February 9, 2004.
*485 DeSimone Law Offices, attorneys for appellant (John G. DeSimone, on the brief).
Peter C. Harvey, Attorney General, attorneys for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel, and Debra A. Allen, Deputy Attorney General, on the brief).
Before Judges COBURN, WELLS and FISHER.
*484 The opinion of the court was delivered by FISHER, J.A.D.
The various subsections of N.J.S.A. 43:15A-7 delineate the conditions which render a person eligible or ineligible for membership in the Public Employees Retirement System (PERS). One subsection renders eligible every public employee who is a "veteran ... including a temporary employee with at least one year's continuous service." N.J.S.A. 43:15A-7(b). Another excludes "temporary employee[s]... employed under the federal Job Training Partnership Act." N.J.S.A. 43:15A-7(h). In interpreting the interplay of these provisions, we conclude that a period of time during which a veteran was employed as a temporary Job Training Partnership Act (JTPA) employee may not be included for PERS purposes and, thus, affirm the decision of the Board of Trustees, Public Employees' Retirement System (PERS Board) rejecting appellant's application to purchase service credit for his time as a JTPA employee from the date subsection (h) was enacted to the date his position was made permanent.
After his honorable discharge from the United States Navy in 1974, and until 1993, appellant was continually employed by Salem County in various temporary positions pursuant to either the Comprehensive Employment Training Act[1] or the JTPA.[2] The Salem County Board of Chosen Freeholders passed a resolution in 1993 making appellant's position permanent, at which time he was enrolled in PERS as a full-time employee. He retired on June 30, 2000 on a PERS pension.
Once retired, appellant sought to purchase prior service credit to augment his pension. The PERS Board prohibited the purchase of additional service credit for the period between September 19, 1986 and April 1, 1993.[3] This determination was based upon the fact that on September 19, 1986 the Legislature enacted N.J.S.A. 43:15A-7h, thereby declaring that

A temporary employee who is employed under the federal Job Training Partnership Act ... shall not be eligible for membership in the system. Membership for temporary employees employed under the federal Job Training Partnership Act ... who are in the system on September 19, 1986 shall be terminated,....
[N.J.S.A. 43:15A-7(h) (emphasis added).]
Notwithstanding, appellant claimed the right to purchase the prior service credit in question, even though he was then a temporary JTPA employee, relying upon subsection (b) of the same statute:
Any person becoming an employee of the State or other employer after January 2, 1955 and every veteran, other *486 than a retired member who returns to service pursuant to [N.J.S.A. 43:15A-57.2] and other than those whose appointments are seasonal, becoming an employee of the State or other employer after such date, including a temporary employee with at least one year's continuous service [is entitled to membership in PERS].
[N.J.S.A. 43:15A-7(b) (emphasis added).]
We observe that the relationship between subsection (b) and subsection (h) of N.J.S.A. 43:15A-7 has gone unexamined since subsection (h)'s enactment in 1986. After having carefully considered the language and purposes of these subsections, we reject appellant's contention and conclude that subsection (h) excludes any rights which might, on the surface, appear to have been created by subsection (b).
Our immediate approach in ascertaining the meaning of a statute is to first look to the language employed by the Legislature. Hubbard v. Reed, 168 N.J. 387, 392, 774 A.2d 495 (2001). If the statute is clear and unambiguous on its face and allows for only one interpretation, we should "delve no deeper than the act's literal terms," State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982), and "infer the Legislature's intent from the statute's plain meaning," O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002). An examination of the language of subsections (b) and (h) does not immediately provide a clear or unambiguous answer to the issue raised. Subsection (b) refers to the temporary employment of a veteran but makes no mention of JTPA temporary employment, whereas subsection (h) specifically excludes JTPA temporary employees without mentioning veterans. In short, both subsections express clear parameters when standing alone but uncertainty is generated when they are read together in an attempt to understand whether an employee, who fits both categories, is either eligible or ineligible.
In light of the ambiguity created by the conflict of these otherwise clear provisions, we must determine which provision the Legislature intended to be superior when their scope overlaps. This problem may be resolved through the consideration of intrinsic and extrinsic evidence of their intended meaning.
Intrinsic evidence includes the information and understanding which may be gathered from the internal structure of the statute and the conventional meanings of its words and phrases. Certain time-honored guides to statutory interpretation can serve to illuminate the most likely intention which the Legislature meant to convey in the words actually employed. These canons of construction are not binding but are utilized as an aid in determining legislative intent. Elizabeth Bd. of Educ. v. N.J. Transit Corp., 342 N.J.Super. 262, 267, 776 A.2d 821 (App.Div.2001).
One of those guides is best known by its Latin name: "ejusdem generis." Literally meaning "of the same kind," ejusdem generis "calls for more than merely an abstract exercise in semantics and formal logic." 2A Norman J. Singer, Sutherland Statutory Construction § 47:18 (6th ed., 2000) (quoted with approval in Stryker Corp. v. Dir. Div. of Tax., 168 N.J. 138, 157, 773 A.2d 674 (2001)). Instead, its application "rests on practical insights about everyday language usage." Sutherland, supra. This particular guide suggests that the inclusion of specific words and phrases controls or limits more general words and phrases, as we have recognized in interpreting the statutes applicable to PERS, Burkhart v. Pub. Emp. Ret. Sys., 158 N.J.Super. 414, 420, 386 A.2d 428 (App.Div.1978), and as has been held in *487 other contexts as well, Stryker, supra, 168 N.J. at 155-56, 773 A.2d 674; Kavky v. Herbalife Intern. of Am., 359 N.J.Super. 497, 506-07, 820 A.2d 677 (App.Div.2003).
In the present situation, it is true both provisions in question regulate a specific aspect of PERS eligibility. Subsection (b) describes the rights of an employee who is also a veteran and includes, without specification,[4] temporarily-employed veterans. Subsection (h) specifically governs only JTPA temporary employees but in broad terms.
In employing ejusdem generis as a guide to understanding the relationship of these provisions, we view subsection (h) as more specific than subsection (b) because subsection (h) applies to a narrow subset of the broader class of employees described in subsection (b). That is, in comparing the two provisions, we initially look to the single phrase common to both subsections"temporary employee." That phrase is undefined and unlimited in subsection (b) and, thus, conveys a broader and more general connotation than subsection (h), which inherently acknowledges that there is more than one type of "temporary employment" and then expressly excludes only JTPA "temporary employees." Since subsection (h) has a more narrow and specific focus, we conclude that the class of employees otherwise eligible pursuant to subsection (b) is limited by that smaller class of temporary employees excluded by subsection (h).
Also, because subsections (b) and (h) relate to the same general subject matter, i.e., PERS eligibility, it can be said they are in pari materia. Accordingly, our primary goal is to attempt to harmonize these provisions if possible. State v. Green, 62 N.J. 547, 554-55, 303 A.2d 312 (1973); County of Camden v. S. Jersey Port. Corp., 312 N.J.Super. 387, 398, 711 A.2d 978 (App.Div.), certif. denied, 157 N.J. 542, 724 A.2d 801 (1998). However, as observed earlier, these provisions cannot be harmonized unless we imply some limitation in one of the subsections which the Legislature's words did not express. Because of this conflict, we turn to another related interpretation aid which recognizes that when separate provisions are in pari materia the more specific provision should control:
Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, ... unless it appears that the legislature intended to make the general act controlling.
[Sutherland, supra, § 51:05.]
As a result, because we have found subsection (h) to possess a more specific meaning than subsection (b), this additional interpretation aid suggests that subsection (h) should control when in conflict with the broader scope of subsection (b). See also Wilson v. Unsatis. Claim and Judg. Fund, 109 N.J. 271, 278, 536 A.2d 752 (1988); City of E. Orange v. Essex County Register, 362 N.J.Super. 440, 444, 828 A.2d 932 (App.Div.2003).
In applying this general rule of interpretation, our Supreme Court has also found relevance in the time when the conflicting provisions were enacted, concluding that a provision controlled not only because it was more specific but also because it "result[ed] from a more recent act of the Legislature." Maressa v. New Jersey Monthly, 89 N.J. 176, 195, 445 A.2d 376, *488 cert. denied, 459 U.S. 907, 103 S.Ct. 211, 74 L. Ed.2d 169 (1982). The fact that subsection (b), in its present form,[5] was enacted on April 9, 1985 and subsection (h) was enacted on September 19, 1986, more than a year later, coupled with subsection (h)'s more specific scope, further leads us to conclude that subsection (h) controls the present dispute.
Extrinsic evidence of the Legislature's intent also supports the rejection of an interpretation that would allow veteran status to override JTPA status. Extrinsic evidence may take various forms, including any reliable evidence of the legislative history of a statutory scheme. Nat'l Waste Recyc., Inc. v. Middlesex County Imp. Auth., 150 N.J. 209, 224, 695 A.2d 1381 (1997). In particular, our courts have found persuasive a governor's message in signing a bill into law or returning it unsigned, State v. Sutton, 132 N.J. 471, 483, 625 A.2d 1132 (1993), since such a message is considered part of the legislative process, McGlynn v. N.J. Pub. Broad. Auth., 88 N.J. 112, 159, 439 A.2d 54 (1981).
In this instance, we have the considerable benefit of the comments made by Governor Kean regarding the intent of subsection (h). In returning to the Senate a bill containing a narrower exclusion of JTPA temporary employees,[6] Governor Kean detailed the importance of the JTPA and the limited resources available under the program, urging passage of a bill that would exclude all JTPA temporary employees from PERS:
The bill is designed to ensure that JTPA employees will not be terminated because employers must use their limited financial resources for pension contributions, rather than for salaries.
[JTPA] programs have limited financial resources for two reasons. The programs are limited in the amount that they may spend on administration. Administrative expenses include pension contributions and salaries. Additionally, JTPA programs are being affected by budget reductions in domestic programs at the federal level. The combination of a limitation on administrative expenses and a decline in federal funding means that if administrators of JTPA programs must spend administrative dollars on pension contributions, less will remain for employee salaries. The result will be immediate layoffs.
While I support the purpose for which [the] bill was introduced, I must return the bill so that it may be amended in two areas.
[The bill] must be amended to broaden its scope. In its current form, [the bill] would apply only to JTPA employees not currently enrolled in the PERS. I am advised that this will not assist the majority of service delivery areas in the State because many of their employees are already in the system. Accordingly, I recommend that [the bill] be amended to make its provisions apply to all JTPA employees, regardless of whether they are currently enrolled in the PERS.
I also recommend that [the bill] be amended to delete the provision making membership in the PERS optional for JTPA employees. The Division of Pensions advises that making pension membership *489 optional for any group of public employees would set an undesirable precedent that could affect the actuarial stability of the State-administered pension systems.

The effect of these amendments will be to exempt all JTPA employees in this State from membership in the PERS. This is a necessary step if we wish to keep JTPA employment at current levels.
[Governor Kean's Reconsideration and Recommendation Statement to Senate Bill No. 1471 (April 21, 1986) (emphasis added).]
The product of Governor Kean's recommendation was the enactment of subsection (h), which imposes no limitations in its exclusion of all JTPA employees from PERS membership.
Considering this intrinsic and extrinsic evidence as a guide to the meaning of these provisions, it becomes evident that the broader class of employees contained in subsection (b) was intended to be limited by the more specific, narrower subset of employees described in subsection (h).
For these reasons, we conclude that the PERS Board correctly interpreted and applied subsections (b) and (h) of N.J.S.A. 43:15A-7 by recognizing the supremacy of the latter.
Affirmed.
NOTES
[1] 29 U.S.C.A. §§ 801 to 999.
[2] 29 U.S.C.A. §§ 1501 to 1792b.
[3] The Board did find appellant eligible to purchase credit for his temporary employment from the time of his original employment in 1974 until the enactment of subsection (h) in 1986, as well as forty-five months of military time.
[4] Actually, the temporary employment of a veteran is limited in one respect in subsection (b) not relevant here. To be eligible, the temporary employee must have "at least one year's continuous service."
[5] From the original enactment of N.J.S.A. 43:15A-7 and until its April 9, 1985 amendment, subsection (b) prohibited veterans, whose appointments were temporary or seasonal, from being enrolled in PERS. See Gladden v. Pub. Emp. Ret. Sys., 171 N.J.Super. 363, 371, 409 A.2d 294 (App.Div.1979).
[6] The bill, in its rejected form, allowed JTPA temporary employees the option to enroll in PERS.