**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0343-19

GLENN POOSIKIAN,

    Petitioner-Appellant,

v.

DIVISION OF PENSIONS AND
BENEFITS,

    Respondent-Respondent.

_____

        Argued October 13, 2020 – Decided February 26, 2021

        Before Judges Suter and Smith.

        On appeal from the Board of Trustees of the Public
        Employees' Retirement System, Department of the
        Treasury, PERS No. 2-1484333.

        Robert T. Regan argued the cause for appellant.

        Amy Cheng, Assistant Chief, Deputy Attorney
        General argued the cause for respondent (Gurbir S.
        Grewal, Attorney General, attorney; Melissa H. Raksa,
        Assistant Attorney General, of counsel; Porter R.
        Strickler, Deputy Attorney General, on the brief).

PER CURIAM

Appellant, Glenn Z. Poosikian (Poosikian) appeals from a Final Administrative Determination of the Board of Trustees for the Public Employees Retirement System (PERS),[1] finding him ineligible for a pension.

Poosikian, an attorney, won election to the Haworth Borough Council on November 6, 2006, and took office on January 1, 2007. After being sworn in, Poosikian asked Ann Fay, the Haworth Borough Clerk/Administrator, to enroll him in PERS. He maintains Fay mistakenly told him he did not qualify for PERS enrollment at that time. That year, the Legislature passed Chapter 92, P.L. 2007, of which the relevant statutory section is now known as N.J.S.A. 43:15A-7(d)[2], making elected officials unenrolled prior to July 1, 2007 ineligible for PERS

---

[1] The Public Employees Retirement System of New Jersey (PERS) is a defined benefit plan administered by the New Jersey Division of Pensions and Benefits. N.J. Division of Pension and Benefits, PERS Member Guidebook (February 2020).

[2] N.J.S.A. 43:15A-7(d) reads in pertinent part:

> Elected officials commencing service on or after the effective date [July 1, 2007] shall not be eligible for membership in the retirement system based on service in the elective public office, except that an elected official enrolled in the retirement system as of that effective date who continues to hold that elective public office without a break in service shall be eligible to continue membership in the retirement system under the terms and conditions of enrollment.
>
> [N.J.S.A. 43:15A-7(d).]

pensions. Since his 2006 election, Poosikian has served continuously as a Haworth councilperson, winning re-election in 2009, 2012, 2015, and 2018. We discern nothing in the record which reveals whether Poosikian took action to determine his PERS enrollment eligibility one way or another between the time he first inquired of Fay until 2018, over a decade later.

Sometime in 2018, Poosikian became aware that he may have been eligible for PERS enrollment between January 1 and July 1, 2007. Poosikian contacted a payroll clerk in Haworth, where he remained an elected member of council. The payroll clerk unsuccessfully attempted to enroll him in the PERS system on June 12, 2018. The following day, the Division of Pensions and Benefits (Division) sent the payroll clerk an employment verification form with instructions to complete the form and return it, which she did. On August 9, 2018, the Division informed the Haworth payroll clerk that Poosikian was eligible for PERS enrollment.

Shortly thereafter, the Division sent Haworth an invoice for delayed enrollment in the amount of $1,706.60. After the payroll clerk inquired, the Division directed Poosikian, not Haworth, to personally pay the full amount due. Approximately a month later, on September 10, 2018, the Division sent the borough a Certification of Payroll Deductions, effectively confirming Poosikian's enrollment.

In a November 5, 2018 letter, the Division reversed its earlier decision and advised Poosikian his "enrollment application was processed in error" and that his "account ha[d] been cancelled." The Division letter noted elected officials were not eligible for enrollment in PERS as of July 1, 2007. In support of its position, the Division referenced its October 2008 memorandum[3] instructing local government pension plan certifying officers on enrollment procedure. The October memo stated in part,

> The Division of Pensions and Benefits is seeking the help of employers to identify any non-veteran elected officials who are not currently enrolled in either the PERS or the DCRP.
>
> First, employers are asked to identify these officials, list them on the enclosed Non-Veteran Elected Officials Roster, and return that information to the Division.
>
> Second, employers are asked to contact these officials and explain the following enrollment choices.
>
> If the official was serving in an elected office prior to July 2007, and continues to serve in the same term for that same elected office, the official may either enroll in the PERS or complete the enclosed PERS Optional Enrollment Waiver form and return it to the Division of Pensions and Benefits.
>
> [N.J. Department of the Treasury, Division of Pensions and Benefits Memorandum, 2 (October 2008).]

---

[3] The 2008 Division memorandum is entitled, "Enrollment of Elected Officials in the DCRP, exceptions for PERS members, and PERS waiver by Non-Veteran Elected Officials."

The letter also stated the Division never received the Non-Veteran Elected Officials Roster requested from Haworth in the October 2008 memo. Poosikian sought reconsideration of the Division's administrative determination, which was denied.

Poosikian appealed the denial. At the April 17, 2019 PERS Board of Trustees meeting, the Board considered Poosikian's application on the merits. Poosikian and his counsel presented argument at the meeting. No record, written or recorded, was kept of the Board meeting, which we understand from the record to be standard Board practice.

The Board issued its decision on April 29, 2019. The Board denied Poosikian's appeal, as well as denying his August 2018 enrollment application on the merits. The Board noted that Poosikian had the option to enroll in PERS when he first took office on January 1, 2007, but that Haworth submitted no enrollment application on his behalf until June of 2018. The Board found Poosikian's 2018 retroactive enrollment to be barred by the enactment of N.J.S.A. 43:15A-7(d). The Division further noted that the Borough failed to respond to its 2008 memo request to identify non-veteran elected officials, like Poosikian, not currently enrolled in PERS.

Poosikian timely appealed the decision, seeking its vacation, or in the alternative, an administrative hearing.

The Board issued a Final Administrative Determination dated August 22, 2019. The Board considered the "personal statements" of Poosikian, presumably at the April 19, 2019 Board hearing, as well as the written submissions and documents in the record. The Board found no disputed questions of fact and held Poosikian's enrollment application could be decided without the need for an administrative hearing. The Board concluded, under N.J.S.A. 43:15A-7(d), elected officials were barred from enrolling in PERS after July 1, 2007. In its decision, the Board did not address whether, under these facts, retroactive enrollment was appropriate using the correction of errors statute, N.J.S.A. 43:15A-54. The Board denied Poosikian's request to vacate the April 29, 2019 decision, and also denied the alternative relief of an administrative hearing.

Poosikian appealed the Final Administrative Determination, and argues the following before us:

> POINT I: PLAINTIFF WAS ELIGIBLE FOR ENROLLMENT IN PERS ON THE DATE HE TOOK OFFICE, AND THE FAILURE OF A MUNICIPAL OFFICIAL TO ENROLL HIM REQUIRES THAT RETROACTIVE ENROLLMENT BE PERMITTED
>
> POINT II: THE CORRECTION OF ERRORS STATUTE PERMITS RETROACTIVE ENROLLMENT

Our role in reviewing the decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility, City of Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980), and defer to its fact finding, Utley v. Bd. of Review, 194 N.J. 534, 551 (2008). We will not upset the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Lavezzi v. State, 219 N.J. 163, 171 (2014); Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963).

On questions of law, our review is de novo. In re N.J. Dep't of Env't Prot. Conditional Highlands Applicability Determination, 433 N.J. Super. 223, 235 (App. Div. 2013) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

We have held that "N.J.S.A. 43:15A-54 was adopted as a provision for the correction of errors, both as to the amount of pension benefits and the inclusion of members erroneously excluded by prior oversights." Burkhart v. Pub. Emps. Ret. Sys., State, Dep't of Treasury, 158 N.J. Super. 414, 421 (App. Div. 1978).

The correction of errors statute "should be liberally construed and administered in favor of the persons intended to be benefited thereby." Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 539 (App. Div. 2004) (quoting Burkhart, 158 N.J. Super. at 423). The statute "is specifically designed to correct past errors, caused not by the oversight of employees[,] but by that of employers." Ibid.

We find Poosikian's argument persuasive. The Board's final decision is properly grounded, in part, in its reading of N.J.S.A. 43:15A-7(d), which establishes a cutoff date for elected officials to enroll in PERS. However, the Board gave no discernable consideration to facts in this record which, in our view, warrant scrutiny under the correction of errors statute, N.J.S.A. 43:15A-54. Those facts include, but may not limited to, the following:

> (1) Poosikian maintained a borough official, Fay, misinformed him about his PERS eligibility status during a six-month window when he was eligible to enroll. He maintained that due to the borough's mistake, he missed an opportunity for PERS enrollment, even though he made a timely inquiry;
>
> (2) Borough officials missed a second opportunity to enroll or at least notify Poosikian about his PERS eligibility by not responding in 2008, when the Division contacted Haworth's certifying officer seeking the names of elected officials not enrolled in PERS or DCRP at that time; and
>
> (3) Finally, the record shows Poosikian, an attorney at the time of his first election to council in Haworth,

delayed a follow-up inquiry regarding his pension eligibility for over ten years.

We take no position as to whether Poosikian is entitled to enrollment in PERS. We note that government must "turn square corners" in its dealings with others, and "comport itself with compunction and integrity." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985). "[E]ven with respect to public entities, equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions." Skulski v. Nolan, 68 N.J. 179 (1975). We leave it to the sound discretion of the Board to fully consider and address the factual and legal issues in the context of N.J.S.A. 43:15A-54, and determine whether an administrative hearing is warranted on the record below.

Reversed and remanded for the Board's action consistent with the principles set forth in this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION