851 A.2d 743 (2004)
370 N.J. Super. 524
MICHEVE, L.L.C., Plaintiff-Respondent/Cross-Appellant,
v.
WYNDHAM PLACE AT FREEHOLD CONDOMINIUM ASSOCIATION, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 2004.
Decided July 2, 2004.
*744 Kenneth W. Biedzynski argued the cause for appellant/cross-respondent (Goldzweig, Farrell & Green, attorneys; Mr. Biedzynski, of counsel and on the brief).
Bruce H. Dexter, Hackensack, argued the cause for respondent/cross-appellant (Mr. Dexter and Virginia Kilcoyne, on the brief).
Before Judges CARCHMAN, WECKER and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
After a non-jury trial, defendant Wyndham Place at Freehold Condominium Association (defendant or the Association), appeals from a judgment requiring that it refund to plaintiff, Micheve, L.L.C., six months of condominium maintenance fees owed by the prior owner of the unit purchased by plaintiff at a sheriff's foreclosure sale. Plaintiff cross-appeals from the trial judge's determination that it was responsible for a capital contribution assessment and administrative processing fee. We affirm on both the appeal and the cross-appeal.
The facts, most of which were the subject of a stipulation at trial, are quite straightforward. At a sheriff's sale, on April 8, 2002, plaintiff successfully bid on a condominium unit at 32-02 Oliver Court in Freehold and purchased it for investment purposes. A foreclosure judgment had been entered against the property on February 7, 2000. On June 4, 2002, the sheriff's deed of sale was signed.
At an April 15, 2002 board meeting, the Association passed a resolution that amended the requirement that a unit owner pay a one-time capital contribution assessment equivalent to three months of fees plus $750, to take effect for any unit acquired after June 1, 2002. The same resolution memorialized the collection of a one-time $125 processing fee, although the Association had been charging the fee since at least 1994. The resolution provided that a unit owner "shall pay" the fees "[u]pon acquisition of title to a unit." Defendant asserted at trial that it was entitled to collect these fees specified in the resolution because plaintiff took title to the property on June 4, 2002, which was after *745 the June 1, 2002, effective date of the resolution.
Plaintiff resold to a third party on September 17, 2002. At the time the property was resold, the Association assessed plaintiff a total of $3125.70, which consisted of: $920.28 in association fees for the six month period prior to the sheriff's sale; another charge of $920.28 for six months of association fees from April (the time of the sheriff's sale) to September 2002 (when plaintiff sold the unit); a capital contribution charge of $1285.14; and a $125 processing fee that was charged when a unit changed hands to cover the expense of reviewing the books to determine any amounts due. On February 25, 2000, approximately two years prior to plaintiff's purchase of the unit, defendant had recorded a lien with the Monmouth County Clerk's Office for unpaid common expenses on the property. Plaintiff disputed its obligation to pay $750 of the capital contribution charge.[1] However, plaintiff paid the amounts demanded by the Association for back fees, the capital contribution and the processing fee. Plaintiff also paid the unit's Association fees for April to September 2002.
On October 12, 2002, plaintiff filed a complaint in the Special Civil Part, seeking a refund of allegedly illegal charges the Association had imposed on it to cover the $920.28 in maintenance fees covered by its six-month priority lien, $1285.14 for the contribution to capital and $125 for the processing fee.
A bench trial was held on July 2, 2003. In an oral ruling, Judge O'Hagan concluded that plaintiff was entitled to a refund of the association fees attributable to the six month period prior to the date of the sheriff's sale because the charge was precluded by the provisions of N.J.S.A. 46:8B-21(e), which states that a purchaser who takes title of a condominium unit as a result of foreclosure is not responsible for the unpaid portion of common expenses chargeable to the former owner.
In a subsequent written decision, the judge ruled that plaintiff had to pay the additional capital contribution fee of $750 and the one-time processing fee of $125. The judge held that the date of the sheriff's sale was not the controlling date for determining when plaintiff became the owner of the unit. He reasoned that prior to the date the deed was conveyed, the mortgagor still had the right of redemption and other parties had the right to object by motion to the sale. Moreover, Rule 4:65-5 required the Sheriff to file a report with the court before any sale could become final. "[N]either the date of sale or the payment of consideration is determinative." As a result, the judge concluded that ownership was transferred when the "appropriately executed" sheriff's deed was "delivered" on June 4, 2002.
Judge O'Hagan rejected defendant's contention that it was entitled to counsel fees on the basis that it had to sue to enforce a lien, finding that the lawsuit was an action by the property owner seeking the disgorgement of monies paid to defendant. Thus, the "American system" required each side to bear its own fees.
Defendant argues that various provisions of the Condominium Act, N.J.S.A. 46:8B-1 to -38, permitted it to collect, from plaintiff, six months of the association fees that had accrued prior to plaintiff's purchase of the unit. We reject defendant's argument, and agree with Judge O'Hagan's well-reasoned conclusions.
The Condominium Act provides for associations to place liens on units for unpaid *746 association fees, with certain limitations:
a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees.... Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due....
b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, [sic] except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:
(1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.
(2) With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.
....
(4) The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.
....
e. If a mortgagee of a first mortgage of record or other purchaser of a unit obtains title to such unit as a result of foreclosure of the first mortgage, such acquirer of title, his successors and assigns shall not be liable for the share of common expenses or other assessments by the association pertaining to such unit or chargeable to the former unit owner which became due prior to acquisition of title as a result of the foreclosure. Any remaining unpaid share of common expenses and other assessments, except assessments derived from late fees or fines, shall be deemed to be common expenses collectible from all of the remaining unit owners including such acquirer, his successors and assigns.
f. Liens for unpaid assessments may be foreclosed by suit brought in the name of the association in the same manner as a foreclosure of a mortgage on real property. The association shall have the power, unless prohibited by the master deed or bylaws to bid on the unit at foreclosure sale, and to acquire, hold, lease, mortgage and convey the same. Suit to recover a money judgment for unpaid assessments may be maintained without waiving the lien securing the same.
[N.J.S.A. 46:8B-21].
The judge's decision relied primarily on the meaning of section (e). Defendant is correct that the interpretation of the statute's meaning is a question of law, Fed. Pac. Elec. Co. v. N.J. DEP, 334 N.J.Super. 323, 326, 759 A.2d 851 (App.Div.2000), subject to de novo review on appeal. Toll Bros. v. Township of W. Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002).
Judge O'Hagan correctly concluded, however, that the language of section (e) precluded defendant from collecting maintenance fees attributable to the *747 prior owner. "Interpretation of a statute begins with `the plain meaning of the provision at issue.'" Lozano v. Frank De Luca Constr., 178 N.J. 513, 522, 842 A.2d 156 (2004)(quoting Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001)). When a statute's language is "clear and unambiguous on its face," a court should probe no further than the literal meaning of the Legislature's words. Lewis v. Bd. of Trustees, Pub. Employees' Ret. Sys., 366 N.J.Super. 411, 415, 841 A.2d 483 (App. Div.2004).
The plain language of section (e) provided that plaintiff, as the purchaser of the unit at a foreclosure, was not liable for any association fees chargeable to the former owner. When a unit is sold at foreclosure, the association's remedy is to collect out of any excess proceeds resulting from the sheriff's sale or to collect the unpaid expenses from among all the remaining unit owners, including the owner who acquired the property at foreclosure.
Defendant argues that subsection (e) should not apply because "[r]espondent is not a `mortgagee of a first mortgage of record' "'but, rather, "is a purchaser at a foreclosure sale and is in essence an investor." Defendant asserts that "[t]here is no case law or evidence that the protections provided under subsection (e) of N.J.S.A. 46:8B-21 were intended to protect investors like respondent."
Defendant ignores the plain wording of the statute, which states that the exception applies to "a mortgagee ... or other purchaser" who obtains title as a result of a foreclosure. N.J.S.A. 48:8B-21(e). Plaintiff is unquestionably a "purchaser" who obtained title pursuant to a foreclosure sale. Contrary to defendant's assertion, nothing in the statute indicates that investor-purchasers are to be treated differently or less favorably. Moreover, defendant has proffered no reasons why they should be.
Defendant also argues that the basis for plaintiff's liability is found not in subsection (e) of N.J.S.A. 46:8B-21, but rather in N.J.S.A. 46:8B-22. That statute reads as follows:
(a) A unit may be sold by the sheriff on execution, free of any claim, not a lien of record, for common expenses or other assessments by the association, but any funds derived from such sale remaining after satisfaction of prior liens and charges but before distribution to the previous unit owner, shall be applied to payment of such unpaid common expenses or other assessments if written notice thereof shall have been given to the sheriff before distribution. Any such unpaid common expenses which shall remain uncollectible from the former unit owner for a period of more than 60 days after such sheriff's sale may be reassessed by the association as common expenses to be collected from all unit owners including the purchaser who acquired title at the sheriff's sale, his successors and assigns. Unless prohibited by the master deed or by-laws, the association may bid in and purchase the unit at a sheriff's sale, and acquire, hold, lease, mortgage and convey the same.
(b) Notwithstanding any foreclosure, tax sale, or other forced sale of a unit, all applicable provisions of the master deed and by-laws, shall be binding upon any purchaser at such sale to the same extent as they would bind a voluntary grantee except that such purchaser shall not be liable for the share of common expenses or other assessments by the association pertaining to such unit or chargeable to the former owner which became due prior to such sale except as otherwise provided in subsection (a) of

*748 this section or section 21 of P.L.1969, c. 257 (C. 46:8B-21).
(emphasis added).
Defendant selectively quotes portions of N.J.S.A. 46:8B-22(a) to argue that it "provides that a sheriff may sell a unit `free of any claim, not a lien of record, for common expenses'" and that "[t]his same section goes on to provide that collection of these fees may be against the `purchaser who acquired title at the sheriff's sale....'" Both of these quotes ignore the subsequent language in each sentence.
First, N.J.S.A. 46:8B-22 applies when the unit is sold by the sheriff "for common expenses or other assessments by the association." N.J.S.A. 46:8B-22(a) (emphasis added). Thus, the provision applies to foreclosure sales instituted by the association to recoup common expenses or other assessments. This action is authorized by N.J.S.A. 46:8B-21(f), which allows the association to bring a foreclosure suit to recover unpaid assessments.
Second, the statute requires that before the sheriff distributes the funds derived from the sale, the association must give notice to the sheriff that the funds shall be applied to the association expenses. N.J.S.A. 46:8B-22(a). Thus, the statute authorizes the association to recoup the funds from the sale proceeds not, as the Association attempted to do here, from the purchaser months after the foreclosure. The Association did not bring the foreclosure suit here. In fact, it was unaware of the foreclosure until plaintiff resold the unit. Certainly no notice was given to the sheriff to apply the sale proceeds to payment of the unpaid common expenses.
Defendant's contention that N.J.S.A. 46:8B-22 authorizes the collection of six months of fees "against the purchaser who acquired title at the sheriff's sale" is taken entirely out of context. The statute authorizes the association to reassess against "all unit owners including the purchaser who acquired title at the sheriff's sale" the common expenses that remain uncollectible even after the proceeds from the sale are applied. N.J.S.A. 46:8B-22(a) (emphasis added). The language of N.J.S.A. 46:8B-22(a) provides no authority for defendant to collect the entire amount from the purchaser at foreclosure.
Defendant also argues that N.J.S.A. 46:8B-22(b) allows it to collect the funds because they were recorded as a lien pursuant to N.J.S.A. 46:8B-21(a). According to defendant, subsection (b) provides that "a foreclosure purchaser shall not be liable for fees `chargeable to the former owner' except as provided under subsection (a) of N.J.S.A. 46:8B-21, which is the statute which creates a lien of record on behalf of an association." Thus, defendant contends that "foreclosure purchasers are not liable for unpaid and previously accrued association fees except if they are recorded as a lien pursuant to N.J.S.A. 46:8B-21(a)."
This argument is based on a misreading of the words in N.J.S.A. 46:8B-22(b). Contrary to defendant's contention, N.J.S.A. 46:8B-22(b) makes no specific reference to section (a) of N.J.S.A. 46:8B-21 or recorded liens. Instead, the language of N.J S.A. 46:8B-22(b) states that the purchaser is not liable "except as otherwise provided in subsection (a) of this section or section 21 of P.L.1969, c. 257 (C.46:8B-21)." The subsection (a) referred to is that provision in the same statute, not the one in N.J.S.A. 46:8B-21. Subsection (a) of N.J.S.A. 46:8B-22 allows for collection of reassessed fees from all unit owners including the purchaser, as does N.J.S.A. 46:8B-21 in section (e).
Accordingly, we affirm Judge O'Hagan's ruling that defendant was not entitled to collect association fees accrued by the prior owner.
*749 Plaintiff argues in its cross-appeal that it should not be liable for the additional assessments imposed on new unit owners as of June 1, 2002, because the judge erred when it determined that the June 4, 2002 date of the sheriff's deed was the controlling date for determining when plaintiff acquired title to the unit. Plaintiff contends that the judge should have relied on the April 8, 2002 date of the sheriff's sale "or at the latest the date full consideration was paid by plaintiff on May 30, 2002,"[2] as the controlling date for when plaintiff acquired title for the purpose of imposing the assessment.
Plaintiff contends that the issuance of the sheriff's deed was "a merely ministerial act" and the date "purely an arbitrary date with no significance." It argues that it should not be assessed the additional charges because it "had no control as to when the deed was dated."
First, as Judge O'Hagan correctly recognized, the date of the sheriff's sale cannot be considered the date of conveyance because Rule 4:65-5 allows for objections to be "served within 10 days after the sale or at any time thereafter before the delivery of the conveyance."
Second, plaintiff's lack of control over the deed's date does not change the nature or function of the deed as the instrument that actually conveyed title to plaintiff. By definition the purpose of a "deed" is to convey title to real property.
"Deed" means a written instrument entitled to be recorded in the office of a county recording officer which purports to convey or transfer title to a freehold interest in any lands, tenements or other realty in this State by way of grant or bargain and sale thereof from the named grantor to the named grantee.
[N.J.S.A. 46:15-5].
Similarly, Black's Law Dictionary defines "deed" as "[a] conveyance of realty; a writing signed by grantor, whereby title is transferred from one to another." Black's Law Dictionary 414 (6th ed.1990).
Finally, in CKC Condominium Association v. Summit Bank, 335 N.J.Super. 385, 391, 762 A.2d 674 (App.Div.2000), we held that the burdens of ownership upon a purchaser "do not arise until transfer of title," and that transfer was accomplished by execution and delivery of a sheriff's deed. Similar to this case, in CKC, we considered on what date a purchaser at a foreclosure action became responsible, for statute of limitations purposes, for payment of a non-refundable assessment applicable to all purchasers at the time of purchase. Id. at 388-89, 762 A.2d 674. The condominium association's lawsuit attempting to recover the fees was not filed until June 15, 1999, which was more than six years after the May 11, 1993 sheriff's sale, but less than six years after the June 24, 1993 date the sheriff executed and delivered the deed. Id. at 388, 762 A.2d 674.
We concluded that the title was transferred upon execution and delivery of the deed by the sheriff. Id. at 391, 762 A.2d 674. We explained:
The conveyance of land from grantor to grantee was once marked by livery of seisin. That ceremony, marking the transfer of legal title and its attendant rights and burdens, has long since been replaced by our modern system of land records. See Thomas S. Bergin & Paul G. Haskell, Preface to Estates in Land and Future Interests, 10-11 (2d ed.1984). Ownership occurs when a recordable document is delivered. That happened here when the sheriff executed and delivered his deed to [the purchaser]. That took place within the six-year limitations period.
*750 [Ibid].
Plaintiff argues that CKC is inapplicable here because the judge "did not decide substantive rights between the parties and [his] ruling was made for procedural purposes only and should not be used as precedent for the case at bar." Indeed, in CKC, we recognized that "[t]here are obviously other issues bearing upon CKC's rights against Summit by way of both legal and equitable defenses." Id. at 389, 762 A.2d 674. However, that acknowledgement does not change our holding that transfer of title occurred when the sheriff's deed was executed and delivered.
In this case, the execution of the sheriff's deed occurred on June 4, 2002, and plaintiff acquired title on that date. Thus, it was obligated to pay the amount of the assessments applicable to those unit owners who acquired title after June 1, 2002. As a result, the judge's ruling that plaintiff was required to pay the $750 additional assessment and the $125 processing fee is affirmed.
Plaintiff also argues on cross-appeal that the judge committed plain error when it denied plaintiff's request for a refund of maintenance and common charges for April and May 2002. Plaintiff contends that the judge's decision that plaintiff acquired title on June 4, 2002, the date of the sheriff's deed, meant that plaintiff was entitled to a refund of the maintenance fees it had paid for the two previous months. Plaintiff admits that it never specifically requested the refund at the hearing, but it contends that "such an argument is to be implied as a matter of mathematical correctness." Plaintiff asserts that summation was "the very first time in the litigation" that defendant contended that plaintiff took title on June 4 rather than April 8, 2002. We disagree.
The evidence at trial clearly raised the issue of whether plaintiff had to pay the charges for April and May 2002. Testimony of the Association's financial manager, Anthony Gatto, focused on the Association's resolution that became effective June 1, 2002, and the sheriff's deed was submitted into evidence. All of this information was known to plaintiff. The parties fully argued the issue of the controlling date, at which time plaintiff never questioned whether a finding in defendant's favor regarding the date of acquisition of title would entitle plaintiff to a refund of other fees that were not even at issue in the case. Plaintiff cannot claim surprise. The possibility of an adverse result is inherent in any action. By failing to raise the issue before the trial, plaintiff precluded questioning by the factfinder and prevented the opposing party from introducing new evidence on the issue of whether the date of the deed also should be the controlling date for purposes of monthly maintenance fees. We affirm Judge O'Hagan's decision to reject plaintiff's claim for a refund of maintenance fees for April and May 2002.
Finally, plaintiff argues that the April 15, 2002 resolution was illegal and unconstitutional because it violated the Act's provisions that all unit owners be treated equally and, furthermore, it violated the Association's bylaws and master deed.
Plaintiff contends that it raised this issue in its post-trial memorandum but Judge O'Hagan declined to consider it. In his written decision, the judge observed that he had "volunteered" his views on the subject at trial, but that "such claim had never been part of plaintiff's application and should not be considered here." Although the judge questioned whether such an arrangement was permissible, he did not rule on the issue.
As with plaintiff's claim for a refund of maintenance fees, plaintiff failed to raise this issue in its complaint or at trial and it will not be considered here. Nieder v. *751 Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). The issue has not been fully briefed by both parties and the judge has rendered no opinion on the subject. As Judge O'Hagan correctly stated: "Fairness suggests that the defendant should have had the opportunity to address each of these concerns at the hearing. They were not given that right, relying on plaintiff's pleadings and, therefore, this court should not base any decision on new founded theories of the plaintiff."
We likewise affirm the judge's decision denying defendant's request for counsel fees. The argument has no merit, see Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440, 771 A.2d 1194 (2001), and requires no further discussion. R. 2:11-3(e)(1)(E).
Affirmed on appeal and cross appeal.
NOTES
[1] It is unclear why the complaint sought a refund of the entire amount of the charge.
[2] This date is not included in the factual record but is not disputed by defendant.